The *Overseers of the poor of the town of* HARTLAND, appellees, *vs.* The *Overseers of the poor of the town of* WILLIAMSTOWN, appel- lants.

<span>*Windsor,* February, 1826.</span>

The omission of the justices, making an order of removal, to state in their record, that they *examined* the pauper, does not render the proceedings void; and *quere,* if it would be good cause for quashing the order, on *appeal.*

As there was no provision by statute, (previous to 1817,) for giving *notice,* except in cases of remov- al by warrant, and no practice of giving notice otherwise had prevailed; *held,* that notice in any other way would not be good.

It is the duty of the justices, to find *who* the persons are, to be removed, and to insert the *name* of each member of the pauper's family, in the order and warrant of removal; and if omitted, the or- der will be quashed *on appeal,* notwithstanding the general expressions contained in the *form* pre- scribed by statute.

But in former cases, where the statute expressions have been adopted in the order and warrant, and removals have been made and acquiesced in, no appeal having been taken, such removals are held sufficient.

Notice by removal upon the warrant, (previous to the statute of 1817) is conclusive, although it do not appear from the return, that *all* the family were removed.   And an appeal might well have been taken, upon the whole order, from such notice.

THIS was an appeal from an order of two justices of the peace, for the county of Windsor, made at Hartland, in said county, on the 5th day of May, 1824, for the removal of *Daniel Badger, Phebe Badger* his wife, and *Aaron Badger* and *Lucina*

Windsor,
February,
1826.

Hartland
vs.
Williams-
town.

*Badger* their children, as paupers, from said town of Hartland, to said Williamstown. The cause was tried at the December term of Windsor county court, on the issue of "*unduly removed.*"

The town of Hartland proved, on the trial, that the pauper, *Daniel Badger,* moved to and commenced his residence in Williamstown, in the month of August, A. D. 1805, and continued to reside there during the term of five years, immediately succeeding that period, and there rested the cause.

The town of Williamstown, in defence, offered in evidence, the record of an order of removal, made at said Williamstown, by *Thomas How* and *Barzillai Davenport,* two justices of the peace for the county of Orange, on the 28th day of May, A. D. 1817, and copies of the proceedings predicated thereon.

From these, it would have appeared, that the justices of Orange, on the complaint of the overseers of the poor of Williamstown, having caused the said Badger to be brought before them, "after hearing the proofs and allegations, and examining the same, did consider that the said Badger had come to reside at the town of Williamstown, and had not gained a legal settlement therein, and that he had become chargeable to said town of Williamstown, when in fact, he belonged to, and his legal settlement was in, the town of Hartland, &c. and that he ought, of right, to be removed to said town of Hartland, agreeably to law." They therefore ordered, "that the said *Daniel Badger* do remove, with his family and effects, to the said town of Hartland, on or before the 2d day of June next, and on neglect," &c.

That the warrant of removal, which was dated the 4th day of June, 1817, after reciting the order, and suggesting the neglect of the said *Badger* to comply with the same, commanded the officer "to cause the said Badger to be removed and transported, *with his family and effects,* on the nearest and most convenient route from, &c. to, &c. and to be lodged with some overseer of the poor of the town of Hartland aforesaid, and to leave with him a copy of the warrant, with his doings thereon, duly attested.

That the officer's return upon the warrant was as follows : State of Vermont, } At Williamstown, June 4th, 1817, then, *Orange County,* ss. } by virtue of this precept, I took the *family* of the within named Daniel Badger, with all their effects, and conveyed the same on the nearest and most convenient route to the town of Hartland, in the county of Windsor, and on the 6th day of the same month, delivered the same to *Wm. Sabin,* one of the overseers of the poor within and for said town of Hartland, and left with him the said overseer, a true copy of this precept, with my return hereon, thereon endorsed.

The said town of Williamstown also offered the deposition of *Paul White,* the officer, stating that he actually, on the day of the date of his return, which appears of record, in the said proceedings, removed the said *Daniel Badger,* together with his family, consisting of his wife the said Phebe Badger, and their two children, Lucina Badger and Aaron Badger, with their effects, from said Williamstown to said Hartland, and, on the 6th day of June,

1817, delivered them to the overseer of the poor for the said town of Hartland.

Also, evidence tending to prove, that *William Sabin*, the then overseer of the poor for the said town of Hartland, on the said sixth day of June, 1817, accepted the said Daniel Badger, Phebe his wife, and the said Lucina and Aaron Badger their two children, from the said Paul White, and from that time to the fifth day of May, 1824, on which day the order from which the appeal now pending in this Court was made, the said town of Hartland did support and maintain the said Daniel Badger, Phebe his wife, and their said two children, Lucina Badger and Aaron Badger.

This evidence, offered by the said town of Williamstown, viz: the said record and proceedings, the said deposition of Paul White, and the said evidence, were objected to before the Court, by the counsel for Hartland, as being inadmissible evidence on the said issue, or availing as a defence for the said town of Williamstown.

Whereupon, the Court did decide, that the copies of the said record and proceedings, and the deposition of the said White, and the said evidence of the said town of Williamstown, were not evidence proper to be admitted to the said jury, on the trial of the said issue, and as the said town of Williamstown offered no further evidence in the said cause, the said Court directed a verdict to be found for the said town of Hartland.

To which opinion and decision of the said Court, the counsel for the said town of Williamstown did except, &c.

And now at this term, the cause having passed to this Court, was argued for a final decision upon the exceptions aforesaid.

*Marsh*, in support of the exceptions—No appeal was taken from the order of the justices of Orange.

It is objected that this order is not valid, because it does not state the names of all the paupers.

The first answer to this is, that it is good till reversed on appeal, or on *certiorari*. It may be erroneous but not void, and if merely erroneous, it is good till reversed.

An order of removal is a judgment of a court of record, and equally imperative on the parties, as a judgment of this Court.

It is binding, not only on the parties, but on all others, and determines the question of settlement.—*Kings Norton* vs. *Swolhill*, 2 *Salk.* 482.—*Downhead* vs. *Broadchalk*, 2 *Salk.* 481.

Where an order of removal has been made, and the pauper accordingly removed and maintained by another town, and no appeal from the order, the justice, by whom it was granted, cannot supercede it.—*Southfield* vs. *Bloomingrove*, 2 *John. Rep.* 105.

Hartland acquiesced in the removal seven years, into twenty days. It is now too late to find fault with the order.

If this court should reverse the order of the justices of Orange, in this appeal from the order of the justices of Windsor, the paupers may be sent back again by another order, and by

*Windsor,
February,
1826.*

Hartland
*vs*
Williamstown.

Windsor,
February,
1826.

Hartland
vs.
Williams-
town.

an appeal, the question whether this Court has done right, be tried over again.

The statute evidently regards the justices making an order as a court of record, and as such allows an appeal from their decision to this Court, and directs the form of the record.—*Stat.* 325, 370.

We are aware that it has been decided in England, that an order removing a man and his family, is not good. The course there is, for the justices to make the order from which an appeal lies to the sessions, and from either a *certiorari* lies to the King's Bench, and this is in nature of a writ of error. And all the decisions are made on *certiorari;* but such an order has never been decided to be void. Here an appeal lies directly to this Court, and this is the only remedy against an order made by those having authority however erroneous.

A parish, upon whom an order is made, cannot remove till the order is reversed. [2 *Salk.* 488 and 489.] An order not appealed from, is final as to all the world.—2 *Salk.* 492 and 527.

It seems that in Massachusetts, justices have no jurisdiction in making orders of removal. There the overseers of the town, where the pauper becomes chargeable, merely notify the town where he is supposed to belong, that he has become chargeable, and request his removal, and that this notice, if regular and not complied with, becomes imperative on the town notified.

It has been decided, that a notice, which, if answered or particularly objected to, would be insufficient, may become sufficient by an acceptance of it by the other party.—*Paris* vs. *Hiram,* 12 *Mass.* 262.

Here Hartland have accepted the order of removal, and waved all objections, by supporting the pauper and his family seven years.

In *St. Nicholas* vs. *St. Helen,* 2 *Salk.* 473, it is said, taking notice of a pauper by relieving, &c. affords presumption of notice. But this order of the justices is not even erroneous under our statute. The statute, (page 370) directs in terms, that if the overseer shall find any stranger, &c. become, or likely to become chargeable, &c. two justices may examine, &c. and may order him to remove, &c. and if he do not obey the order, may issue a warrant to remove him *and his family.*

In page 324, it gives the form of a complaint against the stranger—then the warning in the same manner, and the record of the order directing the removal of the stranger *and his family*—and lastly, the warrant directing the officer to remove the stranger *and his family.*

The reason assigned in the English authorities why an order, couched in the terms A. B. *and his family,* is not good, is, that the family may consist partly of servants, or children of the wife by a former husband, who are not liable to be removed.

Here, the Court, to reconcile the statute with cases that may arise under it, have only to understand the word *family* in a more restricted sense—that is, to mean his wife and children

only. The settlement of these necessarily follows the settlement of the husband and father——and persons standing in such relations cannot be separated. And it is but reasonable to suppose, that those who cannot be separated from the head of a family, but must follow him wherever he removes, should be considered, and that the Legislature intended they should be considered, as included in the order made for his removal only.

*Windsor,*
*February,*
*1826.*

*Hartland*
*vs.*
*Williams-*
*town.*

The decisions in England above alluded to, one of which is found 2 *Salk.* 482, and another 485, were probably grounded on the *Statute* 14, *Car.* 2*d, C.* 12, *Sec.* 1, (*Keeble's Statutes,* 1225) which is entirely different from ours, and says nothing of removing a family, or persons having families.

So in Massachusetts, the statute requires the names of the persons warned to be returned by the constable to the court of sessions.—*Shirley* vs. *Watertown,* 3 *Mass. Rep.* 322.

Therefore a notice or warning from one town to another, that the family of a certain person, without naming them, had become chargeable, is insufficient, on account of its generality. *Embden* vs. *Augusta,* 12 *Mass. Rep.* 307.

Yet, in the case of *Summerset* vs. *Dighton,* 12 *Mass. Rep.* 383, it was decided, that a warning of a pauper *and his family,* without naming the individuals composing the family, was sufficient to prevent the wife and infant child from gaining a settlement in the town from which he was warned to depart, because, as they could gain no settlement separate from him, it would be nugatory to warn them.—*Digest,* 476.

So in this case, the order of removal of the justices of Orange county, of Badger and his family, must necessarily include his wife and children. And whatever might have been the effect as to servants, apprentices, or children of the wife by a former husband, yet his wife and children could gain no settlement without him, and must necessarily have been removed with him.

The present order, from which this appeal is taken, states the wife and children, naming them, to be the wife and children of the pauper.

It may fairly be contended, that an order to remove the man, being the father of a family, must necessarily include his wife and children, for he cannot be removed without them. On this ground the words can at most be only surplusage.

In addition to this, it is a settled doctrine, that an order unappealed from, however loose and indefinite, is conclusive. This is fully established in *the King* vs. *Hinxworth, Cald. Contin.* 42.

There the order, by two justices, was simply "to remove *Sarah Griffin,* wife of Joseph Griffin, and their five children, from Cheshunt to Hinxworth," and from this order there was no appeal. This order was judged to be final and conclusive as to the whole family, including the husband, though not a party to the order, because the settlement of the husband is that of the wife and children, and the latter being removed, presumed it to be his last settlement, and considered this order as an adjudication of the settlement of the husband also. This first order was

Windsor,
February,
1826.

Hartland
*vs.*
Williams-
town.

before the court by *certiorari*; yet, as there had been no appeal, the Court would not interfere.

The case of *the King* vs. *Towchester* is stated in the note, as confirming this decision, and is to the same effect.

The case of *Nympsfield* vs. *Woodchester*, 2 *Strange* 1172, is in point, and almost equally decisive of this question. In this case a man and his wife were removed from Nympsfield to Woodchester. They afterwards returned to Nympsfield, and were now sent back with their children born in Nympsfield, and on an appeal as to the children, and an offer to prove that the man had a former wife living. But the evidence was refused, and the court considered that the legality of the marriage was established by the former order, and could not be impeached by entering into the former order, which had been acquiesced in.

The case of *Harrow* vs. *Ryslyp*, 2 *Salk.* 524–5. In this case Harrow removed the pauper to Ryslip. Ryslip appealed, and the order was confirmed. Afterwards Ryslip discovered that *Hindon* was the place of his last legal settlement, and Ryslip was adjudged to be estopped, and bound by the adjudication that the pauper was settled there.

An order quashed on an appeal to the sessions, has been decided to be conclusive between the parties, as one confirmed is against all the world.—*Rex* vs. *Leigh, Cald. Contin.*

The case of *Foster* vs. *Carlton*, 1 *Stra.* 567, where it is decided, that an order quashed by the sessions is conclusive between the same parties.

An order unappealed from is conclusive, not only on the parties, but as to all deriving settlement under them.—*The King* vs. *St. Mary Lambeth*, 6 *T. R.* 615.

An order for the removal of A. B. describing her as "a widow," and there being no appeal, is conclusive, not only as to her settlement, but as to that of her husband also.—*The King* vs. *Rudgeley*, 8 *T. R.* 620.

An order of sessions, on an appeal, stating, that it doth not appear that the pauper had a settlement in the defendant town, and ordering him back with his wife and children, was affirmed in the King's Bench, because, where the husband is settled, there the wife is settled also.—3 *Salk.* 256.

The defendant cannot plead, in bar, error in the judgment. —5 *Com. Dig.* 657.

The sessions, having decided on the settlement of the father as being in A. he having been relieved there forty years ago, and before the birth of the pauper, judged A. to be the settlement of his son the pauper. This was affirmed in King's Bench, *Rex* vs. *Wakefield*, 5 *East.* 335.

If the father had a settlement when the child is born, the child will be settled by parentage, though the father, at the birth, and ever after, lived elsewhere.—*St. Giles*, vs. *Everly*, 1 *Strange*, 580; 2 *Ld. Raymond*, 1332.

Proof of the father's settlement is sufficient to establish that of his son, if nothing appear to the contrary.—*The King* vs. *Stone*, 6 *T. R.* 56.

J. S. and his wife, on the examination of the wife only, were adjudged by two justices, to be legally settled in M. and no appeal taken. This order is good on the face of it, as to the marriage and settlement, so that M. could not, on a subsequent order, give evidence that the marriage was void.—*The King* vs. *Binegar,* 7 *East.* 377.

*Windsor,*
*February,*
*1826.*

Hartland
*vs.*
Williams-
town.

An order of removal signed by two justices, separately, and in different counties, is only voidable, not void; and the parish officers wishing to avoid it, must appeal to the next sessions.—*The King* vs. *Statford,* 7 *T. R.* 596.

1. It will appear from an examination of all the foregoing cases, that among these, no order has ever been quashed in England, and it is believed elsewhere, from which there was not an *appeal* from the justices to the sessions, and the case of the *King* vs. *Hinxworth, Cald. Contin.* 42, shows that it *cannot* be done. And it is there said, the order unappealed from is conclusive. And though the order was there before the court by *certiorari,* Lord Mansfield said that Hinxworth did not appeal when aggrieved, and it was now too late. And *the King* vs. *Towcester,* mentioned in the note, is to the same effect.

It is believed that no case can be found where an order unappealed from was quashed, though a *certiorari* lies as well to the justices as to the sessions.

2. The order of the justices unappealed from, being conclusive against all the world, the Court will give it the most favourable construction, to give it the effect intended by the magistrates; as in *the King* vs. *Hinxworth,* an order removing *Sarah,* the wife, was construed to determine the settlement of the husband: also, and in *the King* vs. *Towcester,* an order removing "a woman and her four children to the place of her last settlement, *the order setting out nothing more,* was construed to determine the place of the last settlement of her husband.

So an order to remove A. B. describing her as "a widow," and there being no appeal, was adjudged conclusive, not only as to her settlement, but that of her husband.—8 *T. R.* 620.

So also an order, unappealed from, is conclusive, not only as to the parties, but as to all who derive a settlement under them.—6. *T. R.* 615.

3. The authorities furnish no instance of an order unappealed from being overruled on any subsequent question arising, in which such removal was relied on; and the effect of an order can be avoided in no way but by an appeal.

These positions being true, the order of the two justices of the county of Orange, made the 28th May, 1817, for removing *Daniel Badger* from Williamstown to Hartland is in force, and it remains to be ascertained what is its effect under a liberal construction, and the legal inferences to be drawn from the facts which appear on the face of it, and the acquiescence of Hartland in accepting, and for seven years, supporting, the paupers under it. And here we may admit, that on a return to a *certiorari,* (when that is the proper mode of proceeding) the order.

*Windsor,*
*February,*
*1826.*
⟶⟿

Hartland
*vs.*
Williams-
town.

would have been quashed for its generality; or, that on appeal to this Court, it would have been reversed on a hearing of its merits. Nay, we may go farther, and admit, that that part of the order, which relates to the family, can have no effect. That it is mere surplusage, (which, by the bye, never vitiates) and yet with propriety contend, that it must have all the legal effect, that it would have had, had it expressly ordered the removal of Daniel Badger, Phebe Badger, his wife, and Lucina and Aaron Badger, their children.

The order contains an adjudication by a court of competent jurisdiction, "that Daniel Badger had come to reside in Williamstown, had acquired no settlement therein, had become chargeable to that town ; and that in fact he belonged to Hartland, and of right ought to be removed to that town."

The officer states in his return, that he delivered the family of Daniel Badger to the overseer of Hartland, but does not state in terms that he delivered Badger himself with the family.

Williamstown offered the deposition of Paul White, the officer yet living, that he did deliver Badger, with his family.

It is contended that this is proper evidence of the fact. In the case of *the King* vs. *the inhabitants of Kirk by Stephen, Burr. Sett. Cases,* 664, a copy of the order of removal, (the original not being produced on due notice) was read in evidence. This copy is recited *verbatim* in the report, and it does not appear from this copy, that there was any return or certificate, that the original or any copy was delivered to the overseers of Kirk by Stephen. But this fact was established by the testimony of the pauper, and also that the copy offered in evidence was a true copy. This is surely going all the length we offer to go in the present case.

But it is to be observed, that the statute directs the justices to issue their warrant to the constable of the town, or to some person specially authorized : but does not require the officer to make any return, or does it direct the authorized person to be sworn.

It is, therefore, not matter of return or of record, but merely matter in *pais,* which may at any time be proved by parole.

No form is given in the statute for the officer's return, though every other proceeding is provided for by statute.

But the most satisfactory answer to this is, that the acceptance and support subsequently by the defendant town, rest merely in parole, and can be proved in no other way. That Hartland has done this by the space of seven years, appears from the exceptions. But how could Badger be accepted without being delivered ?

Again, if Badger and the family were accepted and supported for seven years, the Court will certainly presume that he was delivered by the officer of Williamstown, though this be not stated in the officer's return.

*Windsor,*
*February,*
*1826.*

Hartland
*vs.*
Williams-
town.

An order is made for the removal of Badger and family to Hartland; the officer returns that he delivered the family : the overseer accepts and supports Badger and family for seven years.   Is not the presumption violent, that he was delivered also ?   And is the town of Hartland, for this mere clerical mistake, at this late day, to overthrow this proceeding, otherwise regular ?

In the case of *Atkins* vs. *Bean and others,* 14 *Mass.* 404, the court say, that though the officer has not returned, that he delivered seizen and possession, they would presume that the execution was returned, with a receipt of seizen and possession, signed by the plaintiff's attorney, and endorsed, which would be sufficient.

This is an authority to justify the Court in presuming that he was delivered, and an authority in support of the position, that acceptance by Hartland is sufficient, without proof that he was delivered.

It will be recollected, that the statute directs the justices to order the pauper to remove with his family and effects, by a time to be specified in the order, and if he do not remove, to issue a warrant, &c.

The Court may well presume, in this case, if it be necessary, that Badger obeyed the order so far as he was able, by taking himself off to Hartland, leaving his family and effects to be moved by the officer, and that when they came together at Hartland, the overseer accepted them all together.

The present order and other evidence show, that Phebe Badger is the wife, and Lucina and Aaron the children of Daniel Badger, the pauper removed by the order of 1817.

The legal effect of the order of 1817, whatever might have been the facts or justice of the case at that time, is, that Daniel Badger did then belong to, and had his settlement in Hartland, and it is not now pretended that he has gained one in Williamstown since.

If he then had his settlement there, and has gained none since elsewhere, where have his wife and children now their settlement ?   Is not the settlement of the husband the settlement of the wife ? and is not the settlement of the father the settlement of the children, till they gain one in their own right ?

The Court can come to no other conclusion, than that the order determining the settlement of the husband and father must, and was intended, also to determine the settlement of the wife and children.

This is much more obvious, than that an order determining the settlement of "a wife," "a woman," "a widow," should determine that of the husband, in each of these cases.

The decision, that an order, removing the parents, necessarily determines the settlement of all those, who derive their settlement from them, is in point.   The settlement of the wife is as much derived from the husband, as that of the children from their parents.

32.

*Windsor,*
*February,*
*1826.*

*Hartland*
*vs.*
*Williams-*
*town.*

4. Hartland has, for nearly seven years, *acquiesced* in the order, and supported the paupers, and now ought to be estopped from questioning its validity. After this length of time, the evidence on which the order was grounded may not now be found.

In the case of *Nympsfield* vs. *Woodchester,* the court say, "the marriage being established by the first order, the settlement of the children, which is derivative, follows of course, and can no way be impeached, but by entering into the merits of the first order which has been acquiesced in. For nothing is more settled, than that an order, unappealed from, is conclusive."

5. A decision in favour of the present order of removal would probably disturb nearly all the orders of removal, which have been made under this statute. A decision made in this Court, affirming an order, worded like the one under which we defend, would not avail those claiming under it, more than this will the defendants; for there can be no doubt that nearly all the magistrates have followed the forms prescribed in the statute. And no doubt the records of this court will show, that many such have been confirmed here, on a hearing on the merits.

*Hubbard* and *Everett,* contra.—It appears from the case, that the paupers were settled in Williamstown, unless the record and proceedings of the justices of Orange were valid.

They contended, *First,* that this record is void; because,

1. It appears from the record, that the pauper was not examined.

2. The complaint and judgment are against Daniel Badger, *alone;* while the order is against Badger, his family and effects.

3. The *family only* were removed.

*Secondly,* The order is too general as to the family.

1. It does not appear of what number the family consisted, nor who they are. The record is, therefore, defective as to them. The only safe and proper course is, for the justices to adjudge *who* the family are, and leave nothing to the discretion or the caprice of the officer.

2. It does not appear that all had become chargeable.

3. Some of the family might have had other settlements. And it cannot appear hereafter where any of this family had their settlements.

*Thirdly,* this is a proceeding *ex parte,* and is not to be favoured by construction. Hartland had no notice. That town has never been made a party to the removal of *Daniel Badger,* because Daniel Badger has never been removed.

*Fourth,* This record cannot be supplied by other proof.

The order of removal is final, if regular.—3 *Burn's Just.* 533.

The children of a widow, married again, do not take the settlement of the father-in-law.—3 *Burn's Just.* 363, 4.

They cited also, 3 *Burn's Just.* 500.—2 *Salk.* 485.—*Str.* 114. *Burr. Set. ca.* 177, and the 3 *Burn's Just.* 493, showing the forms of proceedings, in such cases, in England.

The opinion of the Court was pronounced by

SKINNER, Chief J.    If the order of removal of 1817, was *void*, the paupers' residence is in Williamstown, and they were duly removed by the proceeding upon which this appeal was taken; but if not void, the testimony was improperly rejected by the court, and the verdict ought to have been that the paupers were unduly removed.    The omission in the justice's record, in relation to the examination of Daniel Badger, the pauper, cannot render the proceedings void; and whether it would be cause for quashing the proceeding, on appeal before the county court, is at least questionable.    There are cases in which no examination can be had.    In England, an order of removal, unappealed from, has the same effect as the affirmance of the order by the court appealed to.    It is conclusive as to all persons. —2 *Salk.* 481, 488, 489, 524, 527.

Such order, it is presumed, is not conclusive without *notice* to the parish to which the pauper is ordered to remove.    Upon common principles, the right of no one is concluded without notice.    The English statute does not require notice, but we are persuaded, from an examination of the forms of proceeding, that the uniform practice is to give notice; and if that practice had obtained here, under our former statute, the same rules would undoubtedly have been adopted.

Under our statute no provision was made for giving notice, except in cases of removal by warrant, and no practice of giving notice otherwise has prevailed—a majority of the Court, therefore, incline to the opinion, that notice in any other way would not be good.

It is objected to this proceeding under the order of 1817, that the order and removal are void, for that the name of Daniel Badger only is contained therein, who, from the return of the officer, does not appear to have been removed, and therefore no legal notice was given to the town of Hartland.

On an appeal to this Court, in cases like the present, that is, where the order and warrant are to remove "A. B. and family," only, the orders have been quashed, and these decisions though recent, are to be regarded as correct.    Although our statute is not like the English statute in this particular, yet this construction will prevent many evils and inconveniences that were experienced under the former practice.

Indeed the constable has no certain means of knowing, is he a suitable officer to decide, what persons of the *family* ought to be removed.    This is the proper inquiry for the justices, and they ought to decide and name all the persons to be removed, in the order and warrant.    But the letter of the statute in this case having been complied with, and the form here pursued, sanctioned by a long course of practice, to hold the proceeding *void*, would be unwarrantable.    Such decision would tend to disturb rights, long since supposed to be settled throughout the state, and in this case no doubt the inhabitants of Hartland so considered, from the long period they have submitted to the or-

HARVARD LAW SCHOOL LIBRARY.

*Windsor,*
*February,*
*1826.*

Hartland
*vs.*
Williams-
town.

der, and taken upon themselves the burden of supporting the paupers. The consequences of a decision, by which an order is quashed upon appeal, are very different. The effect is upon the particular case, or at most upon such cases as are pending at the time.

On the question whether, from the record, it appeared that the town of Hartland had *notice,* we are compelled to understand and believe, that some part of Daniel Badger's family were removed by the officer to whom the warrant was directed. His return shows that he removed the family, and all the effects of Daniel Badger to Hartland, and left with the overseers a copy of the precept. Admitting that the return does not show that Daniel Badger was removed as part of the family, yet it does show that the warrant was executed by a removal of the family, and *notice* given, by leaving a copy of the warrant which contains the substance of the complaint, the proceeding thereon and order of removal. It cannot be questioned, that an appeal might have been regularly taken thereon by the town of Hartland, and this we believe to have been their only remedy. In England, where the practice is to give notice in all cases, such order, unappealed from, is conclusive; and in this state, with notice by removal, on warrant, it must be so considered.

The testimony offered on the part of the appellants, was, therefore, improperly rejected, and *the verdict must be set aside.*

*Charles Marsh,* for the appellants.

*J. H. Hubbard* and *H. Everett,* for the appellees.